LITTLE
ROCK,
Jan'y 1838

JEFFERY
vs.
UNDER-
WOOD.

JEFFERY *against* UNDERWOOD.

ERROR *to Lawrence Circuit Court.*

The clause of "*in cujus rei,*" &c., is not essential to a deed or bond.   Only
three things are essentially necessary to making a good obligation, viz:
writing, on paper or parchment, sealing, and delivery.

It is not necessary that the obligor should subscribe his name.

There is no occasion in the bond to mention that it was sealed and delivered.
And this rule applies with equal force, under our Statute, to writings where
a *scroll* is affixed at the end of the name.

Where an action is commenced before a Justice of the Peace, the cause of
action must be truly stated in the *summons,* with sufficient certainty to ap-
prize the defendant of the legal character of the suit he is called upon to
answer; and the plaintiff's evidence must correspond with and support the
summons.   Evidence of a cause of action entirely variant from it, will not
be received.

The Statute which provides that the case "shall be tried in the Circuit Court
*on its merits,*" cures only irregularities and formal defects.

The admission of improper testimony is not such an irregularity as is cured
by the Statute.

Where the summons was to answer an action "on a *note of hand*" a writing
obligatory cannot be given in evidence to sustain the action in the Circuit
Court.

Summoning a party to appear before a Justice in an action of debt, does not
make it an action of debt.

It is not necessary to state in the summons the species of action, whether in
*debt, covenant,* &c.; and if inserted it is surplusage.

A note for fifty dollars, *to be paid* in a horse, will not sustain an action of debt.

The opinion delivered in this case sets forth the facts with great
particularity and precision.   *Underwood* commenced his suit before
the justice by summons, against *Jeffery* and one *Crawford.*   The
summons was, to answer " in an action of *debt* on a *note of hand.*"
The summons was not served, nor were any proceedings had on
*Crawford.   Underwood* obtained judgment before the justice against
*Jeffery,* for twenty-five dollars debt, and costs; and *Jeffery* appealed
to the Circuit Court.

In the Circuit Court, a writing was offered in evidence, in the opin-
ion set forth *verbatim,* whereby *Jeffery* and *Crawford* promised to pay
*Underwood* "fifty dollars, *to be paid in a horse,* to be valued against
good trade," &c.   This writing was signed by *Jeffery* and *Crawford,*
and the word " seal," surrounded with a scrawl, not with any thing
said in the body of the note about a seal, or any clause of *in cujus
rei, &c.*

To the reading of this writing, *Jeffery* objected, and his objections
were overruled by the court.   Judgment was thereupon given against
him for twenty-five dollars debt, and costs, &c.

Fowler and Walker, for the plaintiff in error: 1st, The Circuit Court erred in admitting the instrument in writing in evidence, it not being "*a note of hand,*" but a *writing under seal*, as evidenly appears by the word "*seal*" being written at lenght at the end of *Jeffery's* name, and circumscribed with a scroll, in the usual manner: consequently there was a *variance* between it and the writ. *Vide Geyer's Dig.* 382, case of *Mading* vs. *Payton*, in this court at the ———— term, A. D. ————.

2d, The Circuit Court ought to have excluded said writing, because an action of *debt* will not lie thereon; it being a contract for the payment of *fifty dollars*, "*in a horse to be valued against good trade*," &c. Then if it be a writing under seal, the action should have been *covenant;* if not under seal, it should have been *assumpsit: debt*, in either case, being wholly improper and untenable. *Vide Hard. Rep. (Ky.)* 510, *in note;* 1 *Ch. Pl.* 88, *etc.* 100, 101, 109, *et seq.* 112, 113, *et seq.;* 1 *Pirt. Dig.* 234, *et seq.;* 2 *Bibb's Rep.* 584; *Hardin's Rep.* 118; 3 *Monroe's Rep.* 8. See a conclusive adjudication on this point, in 8 *Peters*, 181.

3d, Even throwing the *writ* entirely out of the case, still the judgment should have been for *damages*, either in covenant or assumpsit. The judgment should always correspond to the demand and species of action. See 2 *Tidd's Pr.* 842; 1 *Ch. Pl.* 100, 108, 109, 116.

Linton and Taylor, *contra:* 1st, The court below decided correctly in admitting in evidence the writing sued on; and an action of debt will lie on an instrument of this kind. See *Bac. Ab. action of debt; Com. Dig., debt, A.* 8, *page* 370; *Chit. Pld.* 103, 104, 105, 106; *Blackford's Rep. (Indiana)* 216, 217, 230, 234; 3 *Moore's Index*, 359; 8 *East.* 7.

2d, There is no classification of actions required by law, in proceedings before a Justice of the Peace: *Camp. Dig.* 367, 365, 368, *in sections* 41, 45, 48.

3d, The judgment was right, or if not technically entered, it is cured by statute of Jeofails: *Campb. Dig.* 333, 322.

4th, The appearance cured all defects and irregularities in the writ and form of action. 1 *Tidd's Prac.* 181, 562; 4 *Peter's Rep.* 501.

Ringo, *Chief Justice*, delivered the opinion of the court: This is a writ of error with supersedeas to a judgment of Lawrence Circuit

*Margin:* LITTLE ROCK, Jan'y 1838.

JEFFERY vs. UNDERWOOD.

LITTLE
ROCK,
Jan'y 1838.

JEFFERY
vs.
UNDER-
WOOD.

Court, given upon an appeal from the judgment of a Justice of the, Peace, in a suit commenced by *Underwood* against *Jeffery* and one *N. W. Crawford.* The summons issued on the 4th; returnable on the 9th day of January, 1836, requiring the said defendants to appear before the Justice to answer the plaintiff in an action of *debt* on a *note of hand.* The summons does not appear to have been executed on *Crawford*, and no further proceedings were had against him in the case. Several continuances and two trials by jury were had in the case before the Justice of the Peace; the last of which resulted in a verdict in favor of *Underwood*, for $25; and for that sum, together for the costs of suit, the Justice gave judgment against *Jeffery*, who appealed therefrom to the Circuit Court. On the trial, in the Circuit Court, after the jury was sworn, *Underwood* offered to read as evidence to the jury, the following instrument in writing, to wit:

"On or before the twenty-fifth day of this month, I promise to pay "*John J. Underwood* fifty dollars, to be paid in a horse, to be valued; "against good trade, for keeping the mare.

"*Lawrence*, December the 14th, 1835.

"JESSE JEFFERY, [SEAL.]

"N. W. CRAWFORD, [SEAL.]"

To the reading of which as evidence, *Jeffery* objected; and his objections being overruled by the court, he excepted, and spread the writing on the record, *in haec verba*, as above set forth; and the jury having returned a verdict, the court rendered judgment thereupon for twenty-five dollars debt, together with all the costs expended in and about the case, in favor of *Underwood* vs. *Jeffery.*

Two errors have been assigned specially. The first questions the decision of the Circuit Court, admitting the writing offered by *Under-wood*, and admitted by *Jeffery*, to be read as evidence to the jury. And the second alleges that the Circuit Court erred in rendering judgment in debt, when it ought to have been for damages alone. These questions will be examined in the order in which they are made.

By the summons, the plaintiff in error was called upon to answer in an action of debt on a note of hand; and it is contended by the plaintiff in error, first, that the instrument offered in evidence, and objected to by him, was not a note of hand, but a writing obligatory; and consequently there was a material variance between the writing

offered to be read as evidence to the jury, and the contract mentioned LITTLE ROCK, Jan'y 1838. JEFFERY vs. UNDER-WOOD. in the summons as the foundation of the action; and that therefore the court ought to have excluded it from the jury: and secondly, that this is an action of debt, and debt will not lie on the writing offered and admitted in evidence, and for that reason the court ought to have excluded it. Was the instrument offered and objected to on the trial, a writing obligatory or a promissory note? is the first question to be met and decided. There is no attestation whatever, nor express declaration, any where on the face of the instrument, that it was signed or sealed by the makers. The signatures of the makers appear at the foot of the instrument, with a scrawl in writing annexed, immediately at, against, and after the end of each name. Each scrawl circumscribes the word "Seal," which is plainly written within the scrawl. It is not denied that the scrawl and the word seal inclosed by it, were placed upon said writing as they appear there, by the makers respectively. And it is admitted by all, that if the clause of "in cujus rei testimonum sigillum meum apposen," or any words of the same or like import, had been inserted in the body of the instrument, or prefixed to the signatures, it would have the same force and obligation as if it had been actually sealed; and this would be its legal effect by virtue of the provisions of the statute, which declares that "any instrument in writing to which the person executing the "same shall affix a scrawl by way of seal, shall be adjudged and "holden to be of the same force and obligation as if it were actually "sealed."— Ark's Dig. p. 321.

The question then is, whether an instrument in writing to which the persons executing the same shall affix a scrawl by way of seal, without any attestation or clause of "in cujus rei," &c. or other words of the same or like import, appearing on the face of the instrument, shall be adjudged and holden to be of the same force and obligation as if it was actually sealed. This question would seem to be answered by the provisions of the statute before recited; the language of which is clear and explicit. Its reference is to the act of the party executing the obligation, not to the evidence necessary or proper to prove that act. To affix a scrawl by way of seal to an instrument in writing, is one thing, and the proof that it was so affixed by the person who executed the instrument, is another. The scrawl must appear on the face of the instrument; the proof that it was placed there by way of seal may be by evidence dehors the instrument. The effect

LITTLE
⅋ ROCK,
Jan'y 1838.

JEFFERY
vs.
UNDER-
WOOD.

of the former is declared by the statute; the latter is no where men-
tioned in the statute. They are not mutually dependant one upon
the other; the former may exist upon the writing without any evi-
dence to prove that it was placed there by the person who executed
the writing; in which event it would be deemed sufficient, until its
authenticity was denied; when, if there was a defect of proof to
establish the execution, the instrument would be avoided; not for any
defects on its face, but for matter entirely *dehors* the writing. And
this would be the result, although it was said on the face of the instru-
ment that the maker had thereunto set his hand and affixed his seal:
for it is clear that if the person sought to be charged, never in fact
signed, sealed and delivered the instrument, as his deed, he would
not be estopped by any thing appearing on the writing from denying
that it was his deed; because until that execution and delivery is
admitted or proved, the language of the deed cannot be said to be
his; and this proves that the clause of "*in cujus rei*," &c. is not essen-
tial to the deed, and does not *per se* prove that it was in fact signed
and delivered by the person whose name and seal appear to the
writing. The fact of sealing only, and not the attestation is mention-
ed in the statute. The intention of the Legislature in enacting this
law, was to place all writings to which the person executing the same
should affix a scrawl by way of seal, upon the footing of sealed
instruments. This object, and no other, was designed to be accom-
plished by the law, as is clearly indicated by the language used. It
was not designed to abrogate seals, but to leave the law as it then
stood, in relation to them, untouched. And there can be no doubt
that a writing duly sealed and delivered in the mode anciently used,
would still be good, although the practice has been long disused, and
is now almost entirely superseded under statutory sanction, in most if
not all of the Western and Southern States, and a scrawl by way of
seal, substituted in its place. If we are correct in the view which
we have taken of this statute, and the object it was intended to
accomplish, we have only to ascestain what acts and expressions were
essential in the proper execution of a good and valid obligation at
common law, substituting only the scrawl in the place and lieu of the
common law seal.

A deed is " a writing or instrument written on paper or parchment,
sealed and delivered;" and " an obligation is a deed in writing
whereby one man doth bind himself to another to pay a sum of

money or do some other thing." *Shep. Touch.* p. 50, 367. And it is said that there are only three things essentially necessary to the making a good obligation, viz: writing on paper or parchment, sealing, and delivery: and it has been adjudged not to be necessary that the obligor should sign or subscribe his name, because subscribing is no essential part of the deed; sealing being sufficient. *Bacon's Abr.* title *Obligation*, (6); *Shep. Touch.* p. 54, 56, 60, 369; *Co. Lit.* 35, b. 2; *Blackstone's Com.* 305, 306. Also, though sealing and delivery be essential to an obligation, yet there is no occasion in the bond to mention that it was sealed and delivered. *Bacon's Abr.* title *Obligation,* (C,) and so it has been adjudged; 2 *Co. Rep.* 5, (a); *Co. Lit.* 7 (a); 1 *Sergeant & Rawle*, p. 72; 2 *Serg. & Rawle*, 502; 4 *Yerger*, 528.

The practice of affixing seals to the most solemn and important obligations, appears to have existed in times of great antiquity, and has been continued in some form or other down to the present period. It appears to have been introduced into England by the Normans, and came into general use about the time of Edward III; *Sheppard's Touch.* 56; and as the law stood prior to the fourth year of James the First, (up to which period we have adopted the laws of England of a general nature and not local to that kingdom; *Ark's Dig.* p. 130,) the seal must have consisted of some tenacious substance capable of being impressed, attached to the paper or parchment on which the obligation was written, with an impression made thereon by the person to be bound by the obligation or deed; but it was immaterial whether the impression was made with the seal of the party or any other seal, or with a stick or any such like thing. In either manner it was good.

Having thus shown, as we conceive, conclusively, by the authorities cited, that an obligation at common law without the clause of " *in cujus rei*," &c., or any other expression of the like kind, or even the signature of the maker, *if sealed and delivered by him,* would be good as his deed: Therefore, if the construction which we have given to the statute authorizing the substitution of a scrawl by way of seal be true, it follows necessarily that every instrument in writing to which the maker shall affix a scrawl by way of seal, must be adjudged and holden to be of the same force and obligation as if it was actually sealed. The authorities cited also prove that it has been decided uniformly, that the sealing and delivery being matters of fact, are to be tried by jurors, and we cannot perceive any substantial reason

o

LITTLE
ROCK,
Jan'y 1838.

JEFFERY
vs.
UNDER-
WOOD.

why a different rule should be applied to instruments to which there appears to be a scrawl affixed by way of seal. If this was an original question upon the statute, and there was no adjudication upon it, we should not hesitate to declare the note to be as we have stated it; that an instrument in writing to which there is affixed a scrawl in the place of a seal, is considered of the same force and obligation as a sealed instrument, although it is not stated on the face of the writing, or in the attestation, if there be any, that the maker " thereunto affixed his seal;" but it is not. It has been decided in some of the States upon statutes precisely similar to ours. In the Supreme Court of Pennsylvania, it has been decided that any mark made by the pen in imitation of a " Seal," may be considered as a seal. The usual mode is to make a circular, oval, or square mark opposite to the name of the signer; but the shape is immaterial. Something, however, there must be, intended for a seal, and the writing must be delivered as a deed. The court, in deciding upon the question, remarked:

" I will premise that two principles are, in my opinion, well founded: " one, that although in the body of the writing it is said that the " parties have set their hands and seals, yet it is not a specially, "unless it be actually sealed and delivered. Another, that if it be " actually sealed and delivered, it is a specialty, although no mention " be made of it in the body of the writing. The fact and not the " assertion fixes the nature of this instrument." 2 *Sergeant & Rawle*, 502, *Taylor and another* vs. *Glaser;* and 1 *Sergeant & Rawle*, p. 72, *Long* vs. *Ramsey, executor of Long.*

A similar decision was made by the Supreme Court of Tennessee, in the case of *Scruggs* vs. *Brackin*, 4th *Yerger*, 528. But in the case of *Austin's administrator* vs. *Whitlock's executors*, 1st *Munford*, 487, the Supreme Court of Appeals of Virginia held a contrary doctrine, and decided that an instrument in writing attested, " *as witness my hand, this* 22d *day of February*, 1791," and signed by the maker, with a written scrawl annexed to the signature, was not a deed or specialty. The court appears to have rested the decision upon the ground, first, that it was essential to a deed that the clause of *in cujus rei testimonium* should recite that the maker of the deed hath thereunto put his seal; and that without that, or some similar expression appearing on the face of the instrument, it is not a deed, although the subscriber affixed a scrawl to his signature. In support of this position see *Co. Lit. C. a.* 35, *b.* 175, *b.* 225, *a.* and *b.*; and *Litt.* 371, 372,

are cited: but, with all due deference to the opinion of the learned Judges who decided in that case, we feel bound to declare that we have not, after a careful examination of the authorities referred to, been able to discover any thing from which we could feel warranted in drawing the like conclusion; for it is even there said, Co. Lit. C. a., "I have termed the said parts of the deed, *formal* or *orderly* parts, " for that they be not of the essence of a deed of feoffment, for if " such a deed be without premises, *habendum, tenendum, reddendum,* " clause of warranty, the clause of *in cujus rei testimonium,* the date, " and the clause of *his testibus,* yet the deed is good: for if a man by " deed give lands to another, and to his heirs, without more saying, "this is good, if he puts his seal to the deed, delivers it, and makes "livery accordingly," and although *Littleton,* in the sections before referred to, gives the form of the commencement and conclusion of an indenture in the first and third persons, in which the clause of *in cujus rei,* &c. appears, that is no where said to be essential, except in one special case of an entirely different nature. Co. Lit. 230, b. It is there merely given as an approved form, to which there is certainly no objection; and COKE, in commenting upon him, says "it is a safe thing to follow approved precedents;" and also observes, "but thereof hath been spoken at large, *Sections* 1, 4, and 40;" in each of which the fact of sealing is considered as essential to the deed, while in some of them the clause of *in cujus rei,* &c. is said to be merely formal: and this appears to us to be the result of all the authorities cited.

Second, That the omission of the word *Seal,* in the clause of attestation, according to the maxim of law, *expressum facit cessare taci- -tum,* precludes all evidence *dehors* the instrument, of the execution of it in any other manner than is expressed in the body of the instrument. However just the application of this maxim may have been in that case, where the instrument contained on its face the assertion of the maker that he had thereunto set his hand, without also saying that he had also affixed his seal or scrawl, it can have no application whatever to the case before us, where neither the signature nor seal is mentioned, and there is no attestation whatever on the face of the writing.

Third, That the profert of an instrument importing in the body of it to be executed under the hand of the party only, will not support the allegation of a deed, sealed with the seal of the party, although

LITTLE
ROCK,
Jan'y 1838.

JEFFERY
vs.
UNDER-
WOOD.

a seal be to the instrument in reality affixed; inasmuch as that may be done without the party's knowledge or consent. To this conclusion we do not assent; for if it be true, as we have supposed, that it is the sealing and delivery alone which distinguishes the instrument from a simple promise in writing, imparts to it superior efficacy, and elevates it to the dignity of a deed, it cannot, in the nature of things, make any difference whether the instrument bears upon its face or not, the express declaration of the maker that he put his seal thereunto. It is the fact of sealing by the maker, and not his assertion that he *has* sealed the instrument, which binds him. To illustrate this rule, suppose an obligation drawn for $100, by A, payable to B, at the conclusion of which it was added, "I, the said A, do *not* sign or seal this instrument;" yet, without saying otherwise, A does in fact seal and deliver the writing to B, as his deed. There the assertion on the face of the writing is expressly opposed to the act of A, and. according to the principle of this decision, the assertion would control the act, and the profert of the instrument importing in the body of it that it was not signed or sealed by A, would not support the allegation that the writing was sealed with the seal of A, although the seal was manifestly there; and the instrument would be adjudged, simply upon the profert and oyer, not to be his deed. And according to the second position under the potent influence of the maxim, "*expressum facit cessare tacitum*," all evidence that it was in fact sealed by A, must be necessarily excluded. It is true that the facts of that case were a little different, but if we have comprehended the principle decided, it is that the fact of the scrawl appearing to the instrument, was not, *ex vi termini*, evidence that it was placed there by the maker, by way of seal, and the assertion on the face of the writing that he had *signed*, without also saying he had *sealed* it, was sufficient to preclude all proof *dehors* the instrument, that he had in fact sealed as well as signed it, and we do not perceive why they are not equally as applicable to the case supposed, as to that decided; but if we have not entirely misapprehended the force and bearing of the authorities, they all look to the sealing and delivery as the solemn and only essential acts of the party, and declare the legal rule to be, that where, upon inspection, a seal appears to the instrument, it must be intended to be the seal of the maker, and must be so adjudged, unless he will deny that it is his seal, and then it becomes a question of fact, to be determined by a jury; but it could never be regarded as a

mere promise in writing, because if sealed and delivered it would be an obligation: but if that seal was forged, whenever that fact appeared by the finding of a jury, on the plea of *non est factum*, it would be void; and such we apprehend would be the consequence of the payee adding a scrawl to the name of the maker of a promissory note without his consent, after it was signed and delivered. It would be such an alteration of the instrument in a material part as to make it void. This point, however, is not before us, and we would not be understood as deciding it, although we suppose the authorities would sustain us in the conclusion stated. The decision in this case has, we believe, been uniformly followed, and the principle established in it acted upon by the courts of Virginia, from the time it was given: and the same rule we are informed prevails in the States of South Carolina and Alabama. We have not seen any authentic report of the cases decided in either, but understand the decision in Alabama was confessedly made on the authority of the decision in Virginia. The like decision, and upon the same authority, has been made in some of the courts of Arkansas; but we are not aware of any solemn adjudication having ever been made directly upon the question by the Superior Court, and it is now, for the first time in this court, presented in such manner as to require a direct decision to be made upon it. The question has been deemed important, not from any consequences to result from it in the present controversy, but because a great variety of interests of the first magnitude may be either directly or indirectly affected by it in other cases. We have given to it a patient and careful examination, the result of which is, that we are decidedly of the opinion that the instrument in question having upon its face every thing required by law to give to it the same force and obligation as if it was actually sealed, must be regarded as a writing obligatory.

Having ascertained and settled the legal character of the instrument, the question arises, did the court err in overruling the objection of *Jeffery*, and admitting the obligation to be read as evidence to the jury? The objection appears to have been taken on the ground of a variance between the obligation and the contract mentioned in the summons as the foundation of the suit, and was founded on the assumption that the evidence must correspond with the cause of action stated in the summons. That the allegation and proof must correspond, as a general rule, is incontrovertibly established; but its application to this case is questioned, on the ground that the proceeding is

LITTLE
ROCK,
Jan'y 1838.

JEFFERY
vs.
UNDER-
WOOD.

summary and the pleading *ore tenus,* and therefore there is nothing with which the evidence can be compared and to which it must correspond. This argument, although plausible, and in some respects true, cannot be admitted to the extent contended for, without disregarding the provision of the statute prescribing the form of the writ to be issued in cases commenced before a Justice of the Peace. The form there given appears to contemplate and require some definite specification of the contract, which is the foundation of the suit in the body of the writ, not indeed with all the circumstances of time, place, date, and amount, as required in a declaration or other pleading in a regular suit at law; yet with such certainty as to apprize the defendant of the legal character of the demand he is called upon to answer; and this we understand to be the meaning of the Legislature when they use this language in prescribing the form of the summons, viz: " Summons C. D. to appear before me," &c. " to answer unto A. B. in an action on bond, bill, note, book account, or promise, as the case may be." If this is not the true construction of the statute, we are unable to discover the intention of the Legislature. If it is, then it certainly is material that the ground of action should be truly stated; and it follows as a necessary consequence that the plaintiff's evidence must correspond with and sustain it. Evidence of a cause of action entirely variant from it ought not to be received. The defendant in error also insists that the appeal comes before the Circuit Court as an original case, and must be there tried on its merits, without regard to the proceedings had before the Justice. This argument, although true in some respects, is entirely too broad to be admitted without qualification. The statute provides that " on the trial of the appeal," no exceptions shall be taken to any irregularity or want of form in the trial or proceedings of said Justice. Mere irregularities and formal defects are only cured by this statute: but objections of a substantial nature, extending to the merits of the case, as we apprehend, do not come within either its letter or spirit. The exception taken in this case was not to any thing in the trial or proceedings of the Justice, but to the testimony offered and admitted at the trial in the Circuit Court. The former may be strictly regular and technically formal; the latter illegal or irrelevant, or the exclusion of competent legal proof on the trial in the Circuit Court, should be regarded as an irregularity or want of form in the trial or proceedings of the Justice, and therefore cured by the statute. The foundation

of this suit was a note of hand, and it was incumbent on *Underwood*

to sustain it by evidence of a demand of that legal character. He could not therefore be at liberty, at the trial, to set up and prove a demand upon book account, bond, obligation, or for rent due, for which he had not sued or legally called upon the defendant to answer. Such a practice would be at variance with every principle of common law, and in our opinion it is not warranted by any statute. This was the doctrine of the Supreme Court of the Territory of Arkansas, in the case of *Madding* vs. *Payton*, decided at the term 183–, where it was held that a writing obligatory could not be admitted as testimony, the cause of action stated in the summons being a promissory note. The Circuit Court had in that case excluded the evidence on the ground of variance, and the judgment was affirmed.

We are therefore of the opinion that the obligation offered by *Underwood* as evidence on the trial of this case, and objected to by *Jeffery*, ought to have been excluded; and that the court erred in not excluding it. And for this error the judgment must be reversed with costs. But as this case may progress on its return to the court below, some other points assigned as error will be noticed. It is said this is an action of debt, and that debt would not lie on the instrument offered and admitted as evidence.

That it is an action of debt, is urged upon the ground that it is so styled in the summons. That does not, in our opinion, make it so. There is no law requiring the species of action to be stated in the summons. It is not mentioned in the form of the writ prescribed in the statute, and might be wholly omitted without prejudice to the plaintiff, or advantage to the defendant. It is in every point of view immaterial, and being inserted must be regarded as surplusage. The ground of action must be described, but the species of action need not be stated; and the plaintiff must be permitted, on the trial, to adduce any legal evidence to establish any demand which he may have against the defendant, of the same legal description of that stated in the summons, and within the jurisdiction of the Justice, but evidence of any demand of a different character in law, must be excluded. The instrument in question is not for the direct payment of money. The language used does not authorize the conclusions that the obligor expected to pay, or the obligee to receive payment in money. The former intended to pay a horse, and the latter expected to receive one in payment, of the value of fifty dollars, in

LITTLE
ROCK,
Jan'y 1838.

JEFFERY
*vs.*
UNDER-
WOOD.

good trade. This was the evident understanding and intention of the parties. A horse was the subject matter of the contract. Fifty dollars, his stipulated price, was to be ascertained, not by valuation according to the ordinary legal standard of value, but by an appraisement to be made according to the usual terms of barter; or in other words, the value of the horse was not to be estimated by what he was worth in cash, but in good trade, supposing the payment for him to be made in trade. This was the legal import of the contract, and being for property and not money, it is clear that an action of debt would not lie on it.

The cause must therefore be remanded to the Lawrence Circuit Court, for further proceedings to be there had not inconsistent with this opinion.